Good morning, Your Honor. The bedrock of due process is notice and an opportunity to be heard pre-deprivation. Mr. Bradley was aborted. Did Mr. Bradley avail himself of state remedies and what evidence is there of this? Your Honor, we did not get to that point, or I should say Mr. Bradley did not. His counsel sent the defendants a letter approximately a month and a half after his termination and that letter was Was the letter that contested the discharge sufficient to initiate a state remedy, you think? No, I do not, Your Honor. Firstly, the letter was ignored by the defendants. Mr. Bradley tried to initiate dialogue or at least a review or something and that letter was flatly ignored. Secondly, as the briefs point out, there was not a final decision. According to Illinois law, the decision must be in writing, it must be subjected to a vote, and it was just a one-page letter essentially just saying you're fired and the contract is void. You don't dispute that the Illinois Municipal Code's pre-deprivation and post-deprivation procedural safeguards as written would provide adequate due process, do you? No, Your Honor, but I think the problem is here he was never afforded any notice or an opportunity to be heard. So your complaint is that the village failed to follow the code? Yes, Your Honor. And under cases such as Schultz and Lalvani, summarily firing an employee violates due process. The district court's holding here clashes with those cases along with Rebirth Christian and Chaney. And the defendants, they offer nothing to the contrary. Now to be sure, pre-deprivation process can be minimal, but it can't be non-existent. The May 16th letter said nothing. It was a bland 36 words. You're on leave, don't show up to work. And that's it. There was nothing in the letter indicating why Mr. Bradley was on leave, for how long. It doesn't offer him an opportunity to respond. It doesn't explain his rights, let alone reference them. Was it too late to demand a hearing? As for the first letter, well essentially, Your Honor, there was no process identified in the letter. And frankly, as that letter states, Mr. Bradley did not know whether it was too late. He didn't know anything other than he was placed on leave. No rationale as to why, no timeline, just again, you're on leave, don't come to work. And that's it. And under this court's precedent, that's insufficient, that there's no process identified in that letter. Again, so he's told nothing. And as this court recognizes, a meaningful opportunity to be heard before an employer decides to terminate is, in the court's words, a critical protection. It provides a check against mistaken decisions, and it's also the last, best chance to invoke the discretion of a decision maker before termination is decided. Well, I know pre- and post-deprivation, but at least there's some process after the post-deprivation, I would think. I don't know enough about the state law, but it seems that there are lots of opportunities that he could have taken. I don't know when he contacted you or who got involved in this early on. But to wait and then bring a federal claim in the district court was pretty precise on this. Things have to be resolved in state court. Well, Your Honor, I would respectfully disagree on two bases. But the district court didn't say that, huh? Well, essentially, yes. And firstly, Mr. Bradley did make an effort. Again, approximately a month and a half after the termination was made, his attorney contacted the village, and the village just said they didn't say anything. They ignored him. So this is not an instance where Mr. Bradley just gets the termination and runs to federal court. That's not what happened here at all. Secondly, I would again point to the decisions of Schultz, of Lalvani, that specifically state you cannot summarily fire an employee. It violates due process. Mr. Killeher, what you've described amounts to a pretty elementary violation of due process rights here, particularly given the defendant's stipulation, at least in this court, that Mr. Bradley had a property interest protected by state law in his contract. I'm wondering, I had thought, though, in this context that when there's a new mayor, new mayors have an opportunity to appoint new chiefs, and that there are time limits on the validity of such contracts. Your Honor, the... I was thinking of the Lanier case, which seems to involve the same defendants. It does, Your Honor. And the mayor, she had been reelected. Mr. Bradley was appointed by the mayor, and when the mayor was, during I believe her first term, she then was reelected, as the court points out. As far as the contract goes, I would recognize that the mayor does have the ability, in some instances, to appoint people, etc. But the contract, along with Illinois law, and frankly we have not really delved into this issue at all in the briefs or in the district court, simply because it's on a 12b-6. The mayor was never deposed, so we only know some of the machinations of what was going on with the village board and the mayor. One village board member was deposed, and he did explain that there was a lot of things going on, a lot of contention, not necessarily involving Mr. Bradley, but between board members and the mayor. So there were a lot of moving parts going on with regards to the mayor and her appointments. Mr. Kelleher, could you, with respect to the village's reliance upon the Parrott against Taylor exception to what are ordinary procedural due process requirements, could you address our decision in Easterhouse against Felder, as well as the Michalowicz case that the district judge relied upon so much? Certainly. And that's assuming, obviously, that the court entertains this defense. Obviously, we posit that they have waived it and that they never raised it in the district court. There's nothing in the briefs citing Parrott or the RAM unauthorized doctrine. They argued to the contrary in the district court. They said that the mayor did not violate the law. But getting to your question, Your Honor, Easterhouse, that was, I would say, a complex, a quirky decision. Obviously, it involved a conspiracy revolving around an adoption agency. It was a fractured and bonked decision. That plaintiff, the adoption agency, had, I believe, five or six different remedies that essentially mirrored the federal court remedies. So the state, I think, was, or excuse me, the court, I think, was comfortable in sending that plaintiff to state court because most of the remedies available there in state court were available here. As far as the Michalowicz case, again, I mean, we've, in the district court and then again in this appeal, we've stressed that there are six significant distinctions between that case and this case. And I think the district court, with all due respect, was mistaken in invoking that Michalowicz decision. Because in that case, the plaintiff received multiple pre-deprivation protections. Multiple letters, pre-termination meetings with counsel, his counsel, present pre-termination, a pre-termination hearing, a post-termination hearing in which he was allowed to present evidence and witnesses. So I don't think either of those decisions applies. I would point to Armstrong and then this court's recent decision in Simpson v. Brown County. So a termination without notice is you have to go to federal court. Yes, Your Honor. I mean, you have the right. You don't have to. Right, precisely. You have the right to go to federal court. Well, yeah, that's a good point. The right to. That's the only avenue then. I'm not saying it's the only avenue. But I'm saying, again, that a plaintiff, an employee, has that right. And, again, I would point to, not to beat a dead horse, but Chaney and LaVon. So you had a choice. Yes. And you exercised one of them. Right. And the district court said you should have exercised the state option. Right. Yes, Your Honor. Thank you, Mr. Kilher. Thank you. Let's see. Ms. Triello for the village. May it please the court. The Peratt Doctrine absolutely controls the instant procedural due process claim. Did you mention it to the district court? Everything was phrased in terms of McAlowitz, but McAlowitz is an application of the Peratt Doctrine. So under Peratt, is there any practical reason why the plaintiff could not have had a hearing before he was terminated? Well, from the state's perspective, it was. From the village's perspective. From the village's perspective, no. Okay. So it's different from Peratt in that respect. The village seems to have changed position between the district court and this court on whether Chief Bradley had a property interest in his job. Is that right? No, actually. Do you agree that he did? It was stipulated, too, at the district court level as well. As well? Okay. All right. It was. Okay. Did the defendants agree that they breached his contract and violated state law? Well, given that the state law claims are viable still, I don't know. And there was an argument, and Your Honor brought up the subject of, I believe where we're going towards with one of the questions to Mr. Kelleher, involved the mayor's term and whether or not the mayor has the right in a new term to appoint new people. And that argument was brought up in the context of the qualified immunity portion of this case. The municipal code does allow that contracts that exceed a term of a mayor can be considered void. And that was actually a provision that was invoked in one of the letters that went to Mr. Bradley. Okay. I'd like to go back to Peratt because even under Peratt, how can we say that this was a random and unauthorized act when it was the mayor who fired Bradley? Mayor Covington was, after all, an ultimate decision maker with final authority over significant matters. I think the point is that from the state's perspective, we have a statute and a code which plaintiff has not attacked the constitutionality of. That argument actually flies in the face of Monroe against Pape. You seem to be arguing that if the defendants have violated state law, then they are no longer acting under color of state law. And that was rejected back in 1961, if memory serves correctly, and gave rise to the modern 1983 jurisprudence. I don't think that's what I'm arguing, but. Well, maybe you don't think so, but let's take it. Let me follow up, if I could, on Judge Rovner's question. Do you agree that these defendants are the policy makers for the village, that the mayor and the village board are the policy makers for purposes of Monell against New York City? I would agree with that, except I do agree with that, but there's no Monell claim here. There is, well, is there no effort to get injunctive relief? Injunctive relief is mentioned, but there is no evidence. So that would have to be a Monell claim, whether it's cited or not. And we have held in Wilson against Clayton, Indiana, that's 839 F. 2nd at 375, that Parrott does not apply to Monell claims when the And that is certainly what this looks like. If that were what this complaint alleged, this would be different, but here there are no allegations in this particular complaint that allow for the invocation of any exception to the Parrott Doctrine. And we acknowledged in our brief what Your Honor is saying, that, yes, Monell, in that instance, is an exception to Parrott. I'm sorry, I keep calling it Parrott, and I'm different pronunciations. We've also acknowledged that in a situation where there is a statutory scheme that gives unbridled discretion to a decision maker, or that that would be an instance in which one could claim, I'm challenging established state procedure, because the procedure gave empowered this person in uncircumscribed fashion to effectuate this deprivation. But we're so far beyond what this complaint alleged. Here the complaint just says the code lays out a procedure for the removal of a police chief, and Mayor Covington didn't follow it. It does assert a federal constitutional claim, does it? Not one that's viable. Does it invoke the Constitution? It does. Okay. Summary firing of somebody who's got a property interest in their job without notice and an opportunity to be heard generally violates the Due Process Clause, and Parrott we have treated repeatedly as a narrow exception, in essence, when pre-deprivation hearings are not practical. Here, obviously, it would have been practical. See our opinions in Armstrong and Simpson. Let me also ask you, though, about Zinnerman, which helps narrow and explain Parrott. The Supreme Court there, as you may recall, that involved the involuntary or voluntary commitment of somebody to a mental hospital. The Supreme Court explained there that petitioners cannot characterize their conduct as unauthorized in the sense the term is used in Parrott and Hudson. The state delegated to them the power and authority to effect the very deprivation complained of here, Birch's confinement in a mental hospital, and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement. That seems to describe the mayor's situation here. No. It was her responsibility to initiate the process. Why is that not the case? It is her responsibility to initiate the process. However, the statute is written in absolute terms, and it's unambiguous. It can be contrasted. The council brought up a recent decision of the court, the Simpson v. Brown County case. That's a case where, well, I would argue for the opposite, because it is what I want to make as a contrasting point, is what I should say, that in that particular case, the statutory scheme was ambiguous. Here the statute is written in absolute terms. You must do this. You must file the charges. And do you agree the mayor did not? That is what is alleged, yes. Do you agree she did not? That is what the record supports, yes. Do you agree the mayor did not comply with the state law? Correct. I agree, yes. Under the Illinois statutory review, the judicial review that you say is available, is back pay an available remedy? I don't believe so. Okay. In that case, particularly if you take a look at that question that was addressed in Simpson v. Brown County. So where does that leave us in terms of an adequate post-deprivation remedy? Well, if the act doesn't provide it, then I would look at the writ of mandamus, which here we have a complaint that attached a letter, the letter that was brought up from the attorney that wrote after termination saying, a writ of mandamus is available to enforce my client's rights. It's an admission. Can you direct us to any Illinois precedent indicating that back pay would be available under a writ of mandamus? No, I cannot. Would it be? Seems like it would be a pretty tough uphill climb. It may be. I mean, given that mandamus is to a procedure involving the enforcement of an official duty, so we're talking about the mandamus would go toward obviously fulfilling the requirement of the notice, the filing of the charges, those sort of things. But here, I mean, again, for Rule 12b-6 purposes, the letter, which we mentioned, contains that information. If the letter is significant for the fact that we didn't respond to it, I don't see how it can't be significant for what it says, which is that I can go pursue a writ of mandamus to enforce my rights. And that may or may not be an adequate remedy. I believe the attorney didn't qualify it. The second point, counsel, is the one you have to establish, correct? Correct. And somebody saying in a threat letter falls well short of an admission of that point. Is there anything else you'd like to add? No, Your Honor. Thank you. Thank you. Mr. Kelleher, moment of rebuttal if you'd like. Thank you. Once again, the random and unauthorized doctrine was never raised in the district court. The mayor. So their point, though, is, look, Judge Norgel raised Michalowicz, and that's all about random and unauthorized, even if he didn't talk about Parrott. Certainly. But I would also just point out that that contention in this court clashes with the district court contention that the mayor did not violate the law. As far as the mayor, we do assert that she is an ultimate decision maker, therefore obviating Parrott. And then basically I would also point to Schultz once again, and Schultz specifically said a garden variety summary dismissal, that's in Schultz's words, that can't be, Parrott cannot apply to that. And Laudermill distinguished Parrott on those grounds. And finally, I would just point out that the district court here in a sense reward the defendants for ignoring pre deprivation protections. The legacy of its holding is that as long as there's adequate protections on the books, they can be ignored. And that cannot be what Laudermill intended. Thank you, counsel. Thank you, Your Honor. The case will be taken under advisement with thanks to counsel from both sides.